IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 4, 2013 Session

## IN RE LANDEN P.

**Appeal from the Circuit Court for Bradley County**
**No. V-11-551     J. Michael Sharp, Judge**

---

**No. E2012-01291-COA-R3-PT-FILED-APRIL 22, 2013**

---

This is a termination of parental rights case focusing on Landen P. ("the Child"), the minor daughter of Kevin P. ("Father") and Ciera P. ("Mother"). The Child was born in 2007, while the parents were residing in Florida. In 2008, Mother left Father and the Child and moved to Utah. Thereafter, she maintained sporadic contact with the Child only by telephone. Father subsequently moved with the Child to Cleveland, Tennessee in 2009. In 2011, Father's mother and stepfather, Judy and Todd R., obtained custody of the Child through proceedings in the Bradley County Juvenile Court. Judy and Todd R. filed the instant petition seeking to terminate Mother's parental rights on August 1, 2011, for the purpose of adopting the Child. Having been arrested in May 2011, Father was incarcerated at the time of trial. Father consented to the adoption, and his parental rights were terminated on February 24, 2012. Following a bench trial, the trial court granted the petition and terminated Mother's parental rights. The court found, by clear and convincing evidence, that Mother had abandoned the Child by failing to visit and support her during the relevant four-month time period and that termination was in the Child's best interest. Mother has appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Richard L. Elliston, Cleveland, Tennessee, for the appellant, Ciera P.

Philip M. Jacobs, Cleveland, Tennessee, for the appellees, Todd and Judy R.

## OPINION

### I. Factual and Procedural Background

Mother and Father were married on February 19, 2007, while residing in Florida. At the time, Father was stationed there with the military. The Child was born October 31, 2007. A strained relationship between the parents soon developed. Father claimed that Mother had committed adultery, which Mother denied. Mother claimed that Father was abusive, which Father likewise denied. Mother and Father separated in March or April 2008. The Child remained with Father as Mother moved in with friends. Mother last visited with the Child in July 2008. In August 2008, Mother left the state of Florida and relocated to Utah.

In April 2009, Father was discharged from military service and relocated to Cleveland, Tennessee for the purpose of being near his family. In May 2011, Father was arrested and charged with two counts of rape. Prior to his incarceration, Father and Child resided in Cleveland, at times independently and on other occasions with family members. At some point, Mother moved to Nevada. By trial she was residing in a Boulder City condo titled in the name of her mother. It is undisputed that Mother has not seen the Child since she left Florida in 2008.

Father stated that he would call Mother occasionally and the two would speak by phone. He would not hear from her again, however, for several months. During this period, the Child maintained a residence with Father, as Mother never questioned the Child's residential arrangement nor specifically requested to take the Child. Father did not have Mother's address.

Mother had only spoken to the Child via telephone three or four times from 2008-2011. Although Mother claims to have sent financial support for the Child, Father denies having received any payment. Father stated that the maternal grandmother had sent small amounts of money or gifts of clothing two to four times.

The two-day trial in this cause was conducted on March 7, 2012 and on April 4, 2012. Having carefully considered the evidence, the trial court made extensive findings of fact and conclusions of law. The court specifically found that the petitioners proved by clear and convincing evidence the statutory grounds of abandonment by Mother's willful failure to visit and willful failure to support the Child.

The trial court then considered the statutory factors regarding a best interest analysis, likewise making lengthy findings. The court concluded that there was clear and convincing

evidence that termination of Mother's parental rights was in the Child's best interest. The court entered an order terminating Mother's parental rights on May 18, 2012. Mother filed a timely notice of appeal.

## II. Issue Presented

Mother's sole issue presented on appeal is whether there is clear and convincing evidence of the statutory ground of abandonment for termination of her parental rights.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record accompanied by a presumption of correctness unless the evidence preponderates against those findings. *Id.*; Tenn. R. App. P. 13(d). Questions of law, however, are reviewed *de novo* with no presumption of correctness. *In re Bernard T.*, 319 S.W.3d 586 (Tenn. 2010). The trial court's determinations regarding witness credibility are entitled to great weight on appeal, and shall not be disturbed absent clear and convincing evidence to the contrary. *See McCaleb v. Saturn Corp.,* 910 S.W.2d 412 (Tenn. 1995).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L. Ed.2d 599 (1982)). As our Supreme Court has instructed:

> In light of the constitutional dimension of the rights at stake in a termination proceeding under Tenn. Code Ann. § 36–1–113, the persons seeking to terminate these rights must prove all the elements of their case by clear and convincing evidence. Tenn. Code Ann. § 36–1–113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808–09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The purpose of this heightened burden of proof is to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights. *In re Tiffany B.*, 228 S.W.3d 148, 155 (Tenn. Ct. App. 2007); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005). Clear and convincing evidence enables the fact-finder to form a firm belief or

conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings. *In re Valentine*, 79 S.W.3d at 546; *State, Dep't of Children's Servs. v. Mims (In re N.B.)*, 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008).

*In re Bernard T.,* 319 S.W.3d at 596.

## IV. Abandonment

The trial court terminated Mother's parental rights on the ground that she abandoned the Child. Tennessee Code Annotated § 36-1-113(g)(1) (Supp. 2012) provides, as relevant to this action, as follows:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
>   (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred; . . .

Tennessee Code Annotated § 36-1-102(1)(A)(i) (2010) defines abandonment, in relevant part, as:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; . . .

Pursuant to the statute, the court must find that a parent's failure to visit or support was willful. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). As this Court has previously explained:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four

consecutive months.

*In re Audrey S.*, 182 S.W.3d at 863.

Failure to visit or support a child is "willful" when a person is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864. Further, failure to visit or to support is not excused by another person's conduct "unless the conduct actually prevents the person with the obligation from performing his or her duty, or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." *Id.*

This Court further explained:

> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* (citations omitted).

In determining that the petitioners established that Mother willfully failed to visit the Child and failed to provide any support during the applicable four-month period, the trial court entered its Final Order on May 18, 2012, which included the following pertinent findings of fact:

> Based on the above, it is undisputed that [Mother] did not visit her child for the four months as required by statute. This has been proven by clear and convincing evidence. [Mother] testified that in the four-month period she had bought the child a one-way plane ticket. Yet she offered no proof or evidence of any kind to prove this purchase. The petitioners and [Father] testified that [Mother] sent no support for the child in those four months, nor for the many months before that. The court does not find [Mother's] testimony regarding any payments of support to be credible. In fact, the court does not find any credible proof that [Mother] ever paid any support, nor offered any support of any kind, during the years from 2009 through to the time of this hearing. The court takes judicial notice of the fact that [Mother] testified that she worked, was able to support herself, had her own home and paid all of her own bills including cable and internet.

The court finds that there is no evidence that the Petitioners, nor anyone else for that matter, prevented [Mother] from visiting or supporting her child. She had every opportunity to take whatever actions she deemed necessary to see her child and she made the personal choice not to take any action to see the child. The court finds that [Mother] essentially abandoned this child when she left for Utah in late 2008 or early 2009. The court finds that [Mother] has never paid any support for this child. The court finds that the petitioners have proven by clear and convincing evidence the grounds of abandonment – willful failure to visit and abandonment by willful failure to support.

A. Failure to Visit

Mother does not dispute that she failed to personally visit the Child during the relevant four-month period. She argues instead that there was insufficient proof of her willful failure to visit the Child, because she participated in Skype communication with the Child in May 2011. We disagree. Mother testified that she spoke to the Child using Skype, an internet service that provides on-screen audio/video communication via camera, on May 20, 21, 22, 23, and 24, 2011. Mother indicated that this contact occurred while the Child was with Father. Father denied that any Skype conversations occurred.

Mother provides no authority for her contention that these alleged Skype conversations constitute visitation pursuant to the applicable statute. Further, the trial court found Mother's testimony to be lacking in credibility on this point. The trial court noted that Father was incarcerated on two of the days Mother claimed that these conversations occurred. This Court has consistently held that a parent's demeanor and credibility as a witness "play an important role in determining intent, and trial courts are accordingly in the best position to make such determinations." *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). We conclude that Mother failed to show that she engaged in Skype communication with the Child. By reason of this determination, we do not address whether Skype communication between a parent and child constitutes visitation pursuant to the statute.

Mother next argues that she did not willfully fail to visit the Child as she had formulated and funded a plan designed to bring the child to Nevada. Mother argues that this evidence shows that she did not have the intent to abandon the Child. Again, we disagree. The trial court specifically found that Mother's testimony regarding the provision of funds and tickets was not credible.

At trial, Mother testified that she was in contact with Father in the days before his arrest, and stated that she bought airline "buddy passes" for him and the Child so that they could visit her in Nevada. Mother testified that she also put $600 in a joint account which

she still maintained with Father, but did not know what had happened to the funds. Mother provided no proof of the purchase of airline tickets and no proof of sending funds to Father for a trip to Nevada. Father denied that this course of events had occurred.

Mother also admitted that she knew where the Child was residing at least by May 2011, but she did not manage to travel to Tennessee until February 2012. Mother presented no proof that she had ever requested to see the Child and been denied access. Mother likewise presented no evidence that anyone had prevented her from knowing the Child's whereabouts. Thus, the evidence does not preponderate against the trial court's finding, by clear and convincing evidence, that Mother willfully failed to visit the Child. We hold that the trial court did not err in terminating Mother's parental rights on this ground.

### B. Failure to Support

Mother next argues that she did not willfully abandon her child by failing to provide support during the four-month period because she did not know the Child's whereabouts. We find Mother's argument to be unpersuasive. Tennessee Code Annotated § 36-1-102(1)(H) explicitly states, however, that "[e]very parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children." Mother obviously knew that she had some duty of support, as she testified at trial that she sent thousands of dollars to Father in the years since she left Florida. Mother provided no proof of this, however, and Father and Judy R. both denied that Mother had ever sent any support. The trial court found that Mother's testimony was not credible.

Mother now argues that she could not support the Child because she did not know where the Child and Father were residing during the applicable four-month period. Mother testified that after leaving Florida, she hired a private investigator to search for Father, but the investigator was unable to locate him. Mother indicated that the private investigator was simply "a friend." Mother asserted that she did not have an address for Father and did not know his location after he left the military. She and Father spoke a few days before his arrest with Father ultimately sending her a message stating that his mother had filed a missing persons report. Mother indicated that she immediately called the Bradley County Police Department and confirmed that such a report existed. She was told that Father had come in and then left. Mother posits that if she had known the Child was residing in Cleveland, she would have traveled there to get her much sooner.

Mother stated that she knew the address of Father's grandmother in Cleveland, as she claimed to have sent checks and gifts there through the years. Mother testified that the checks had not been cashed, but stated that she had carbon copies of them. She, however, produced no documentary evidence of same. Mother further admitted that she clearly knew

as of May 24, 2011, that Father and the Child were in Cleveland.

As Tennessee Code Annotated § 36-1-102(1)(G) expressly provides: "it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made." In this case, the proof is undisputed that Mother had not visited the Child in nearly four years. As the trial court found, Mother knew she had a Child and she knew where the Child was when she left Florida. Mother admitted that she had contact with Father periodically. Mother provided no proof that Father kept the Child or her whereabouts from Mother. Mother's testimony established that she knew when Father left the military, and at least suspected he was in Cleveland with his family because (1) she claimed that she and her mother sent things there for the Child, and (2) when Father stopped communicating with her in May 2011, her first call was to the Bradley County Police Department. Mother admitted that she had been to the home of Father's grandmother in the past and knew the address. Thus, Mother's contention that she did not know where to send support is without merit.

As stated above, trial courts are in the best position to make a determination regarding a parent's intent, based on her demeanor and credibility as a witness. *D.L.B.*, 118 S.W.3d at 367. In this case, the trial court found that Mother had admitted that she was gainfully employed and able to pay her own living expenses, thus she clearly had the ability to pay some amount of support. The trial court also found that Mother was not credible in her claim to have sent support. Notably, the only support that Mother claimed to have sent in the requisite four-month period was the $600 she allegedly put in an account titled to her and Father. Mother provided no proof of this payment, however, and testified that she had no way of knowing what had happened to it. The evidence does not preponderate against the trial court's ruling, by clear and convincing evidence, that Mother had willfully failed to support the Child for the requisite four-month period. We hold that the trial court did not err in terminating Mother's parental rights on this ground.

## V. Best Interest of Child

While Mother has not appealed the trial court's finding that it is in the Child's best interest to terminate her parental rights, because of the significance of this issue, we have considered it. *See In re Arteria H.*, 326 S.W.3d 167, 184 (Tenn. Ct. App. 2010). When at least one ground for termination of parental rights has been established, as here, the petitioners must then prove, by clear and convincing evidence, that termination of the parent's rights is in the Child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit by establishment of a ground for termination, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877.

After reviewing the record, we find that there is clear and convincing evidence that termination was in the Child's best interest.  Therefore, we affirm the trial court's termination of Mother's parental rights.

## VI.  Conclusion

The judgment of the trial court terminating the parental rights of Mother is affirmed. Costs on appeal are taxed to appellant, Ciera P.  This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE